[Civ. No. 26951.    Second Dist., Div. Three.    May 20, 1964.]

BECKIE BERG, Plaintiff and Respondent, v. KING-COLA, INC., Defendant and Appellant.

William H. Neblett and Cooper & Nelsen for Defendant and Appellant.

William G. Israel for Plaintiff and Respondent.

FILES, J.—Plaintiff brought this action against Ann Borden, as executrix of Benjamin Borden, deceased, and against King-Cola, Inc., a corporation, for a declaration of constructive trust and for a recovery of money based upon the fraud of the deceased. After a trial before the court sitting without a jury, the court gave judgment in favor of plaintiff against King-Cola, Inc., in the amount of $29,111.37. Recovery

against the executrix was denied. King-Cola alone has appealed from the judgment.

The trial court made findings of fact which included the following matters, in substance:

Plaintiff and Ann Borden are sisters; Benjamin Borden (hereinafter referred to as Borden) was Ann's husband and a successful businessman. Plaintiff is a widow, who was 62 years of age in 1955, and not versed in corporate legal matters. From 1940 until the date of Borden's death on February 15, 1960, plaintiff reposed trust and confidence in Borden and counseled with him regarding her business affairs and believed he would deal fairly and justly with her in all things. Borden voluntarily assumed such a position of trust and confidence with plaintiff.

In May 1955 plaintiff and Borden discussed the purchase of the Lakeview Hotel in Elsinore as a business venture. Borden informed plaintiff that in 1947 he had formed King-Cola, Inc., for the purpose of acquiring a soft drink bottling business, but that the corporation had never engaged in business and that the corporation could be used for the purpose of acquiring and operating the hotel, and that the corporation could issue shares of stock for the money advanced by the participants.

King-Cola acquired title to the hotel on August 1, 1955. Plaintiff paid $5,000 to the corporation as a part of the initial capital of the venture. Two other individuals, not parties here, also invested. These two investors later were repaid, and their temporary participation is of no materiality now.

Thereafter the hotel was operated, and plaintiff made additional payments to and for King-Cola. Plaintiff herself managed the hotel until January 1956. Plaintiff made frequent demands on Borden to give her some evidence of her interest in the enterprise or to arrange for stock to be issued by the corporation for her contributions, but Borden each time put her off, stating that he did not have time to take care of the matter. By his statements and conduct Borden dissuaded plaintiff from pursuing any investigation into the matter of issuance of stock.

After the two other investors had withdrawn, Borden and plaintiff agreed to carry on the enterprise in equal shares.

Actually, King-Cola had issued 600 shares of its stock to Borden in 1947 and 1948, and Borden was at all times thereafter its sole shareholder. Borden did not disclose this fact to plaintiff and she was unaware of it. Although plaintiff was

elected an officer and director of the corporation, she held these positions in name only. The books and records of King-Cola were kept by Borden, and plaintiff performed only those acts for the corporation which Borden directed her to perform. At no time did she have any control over King-Cola or exercise the powers of an officer or director.

Altogether plaintiff paid a total of $29,111.37 to and for the benefit of the hotel business and King-Cola, all of which was advanced with the knowledge of Borden and while plaintiff was under the misapprehension that no stock had been issued and under the expectation that stock would be issued to her.

At no time did plaintiff receive any consideration for the $29,111.37 advanced by her.

The court further found that: "At all times between May 1, 1955 and the time of his death in February, 1960, all things done and said by BORDEN relating to the subject matter of this action were done and said by him in his capacity as officer, director and agent of KING-COLA, and as a person in full control of the corporation as the owner of all of the outstanding stock thereof."

Borden died February 15, 1960. He left a will in which he bequeathed his estate to his widow.

In December 1960 plaintiff first learned that King-Cola had issued stock to Borden. Thereafter plaintiff made demand for the return of her money, and upon refusal, commenced this action on February 1, 1961.

Defendant does not contend that there is not substantial evidence in the record to support all of these findings, excepting one item which will be mentioned later.

Upon the facts as found by the trial court, plaintiff is clearly entitled to a return of her money on one theory or another. ▪ Plaintiff and Borden entered into an association to carry on as co-owners a business for profit. This relationship was, as a matter of law, a partnership or joint venture. (Corp. Code, § 15006.) ▪ Borden was a fiduciary, both because of the personal relationship of trust and confidence found by the court, and because of the confidential relationship which exists between partners, as a matter of law. (Civ. Code, § 2219; *MacIsaac* v. *Pozzo*, 26 Cal.2d 809, 813 [161 P.2d 449].) Borden was under a legal duty to disclose to plaintiff matters affecting their business relationship (Corp. Code, § 15020), and his failure to disclose that he held the outstanding stock of King-Cola was a breach of that

duty, amounting to fraud (Civ. Code, §§ 2228, 2232, 2233, 2234). Inasmuch as the trial court found that Borden was at all times acting as agent of King-Cola, the fraud is imputable to the corporation, which thereby becomes answerable to plaintiff. This is enough to support a judgment against King-Cola for restitution of the money which plaintiff paid to it.

The trial court wrote a memorandum of decision in which it expressed the view that plaintiff had paid her money to King-Cola under a mistake of fact, the mistake being her belief that she was investing in a corporation which had not yet issued stock instead of a corporation whose stock was owned by Borden. This theory of recovery of money paid through mistake is supported by the Restatement of Restitution, section 28, which states:

"A person who has paid money to another because of a mistake of fact and who does not obtain what he expected in return is entitled to restitution from the other if the mistake was induced:

"(a)  by the fraud of the payee, or

"(b)  by his innocent and material misrepresentation, or

"(c)  by the fraud or material misrepresentation of a person purporting to act as the payee's agent, or

"(d)  by the fraud or material misrepresentation of a third person, provided that the payee has notice of the fraud or representation before he has given or promised something of value."

This section 28 was cited with approval by the Supreme Court in *Seeger* v. *Odell*, 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291], an action for restitution of real property. Under the rule expressed in the Restatement, King-Cola is obligated to make restitution even if it should be regarded as a third party.

There is no statute of limitations problem in this case.  The court found that in December 1960 plaintiff first learned that King-Cola had issued stock to Borden. It also found that she had been dissuaded from investigating during Borden's lifetime by his statements and conduct. Her action was brought within two months after her discovery of this critical fact. Plaintiff thus had the benefit of the provision of Code of Civil Procedure, section 338, subdivision 4, that a cause of action for relief on the ground of fraud or mistake is "not to be deemed to have accrued until the discovery, by the

aggrieved party, of the facts constituting the fraud or mistake.''

Defendant contends that plaintiff is not entitled to maintain any action because there has been no accounting between the joint venturers, citing a number of cases such as *Hargiss* v. *Royal Air Properties, Inc.*, 206 Cal.App.2d 406 [23 Cal. Rptr. 678], which defendant asserts ''is directly in point on every feature of this case.'' In the *Hargiss* case three men, whom the court referred to as partners, had loaned money to a corporation which had not yet issued stock. Later Hargiss sought to withdraw his money by suing the corporation for repayment of the loan. In affirming a judgment for defendant the court pointed out that the three investors were on an equal footing, and that it would be inequitable to allow one to withdraw his investment until there had been a dissolution and an accounting between the partners.

▉ In the present case plaintiff was never on an equal footing with Borden. Her investment was induced by fraud or mistake for which Borden was responsible. Having been brought into the enterprise under such circumstances, she is entitled to withdraw and she is not required to share with Borden the losses, if there were any, or the future risks of the business.

Defendant makes several arguments revolving about the fact that the complaint contained five separately stated counts or causes of action, and that the record indicates that the judgment is based upon the fifth count only. Defendant's contention seems to be that if plaintiff could not recover under the first four counts, she could not recover under the fifth. Counsel argues, in substance, that a judgment in favor of defendant on certain causes of action should preclude recovery on another count. Actually, there was no judgment in favor of defendant King-Cola, and there was no inconsistency in denying recovery against the executrix.

▉ The short answer to defendant's arguments, and perhaps the best, is that the court rendered a single judgment against King-Cola which was supported by the requisite allegations, evidence and findings of fact; and it is now of no consequence, on defendant's appeal, what other causes of action or legal theories were advanced by plaintiff and rejected by the trial court.

The action went to trial upon three causes of action, designated the first, third and fifth counts. The third cause of action was based upon an express oral agreement between

plaintiff, Borden and King-Cola. Before any evidence was received, the trial court granted a motion to dismiss the third cause of action upon the ground that it showed on its face that it was barred by the statute of limitations.

The fifth count in the complaint is a common count against King-Cola for money had and received. Defendant argues that such cases as *Hays* v. *Temple*, 23 Cal.App.2d 690 [73 P.2d 1248], and *Orloff* v. *Metropolitan Trust Co.*, 17 Cal.2d 484 [110 P.2d 396], preclude the court from granting relief upon a common count when it is unable to grant relief upon the count wherein specific facts are alleged. The cited cases were decisions upon the pleadings, where the court assumed that the common count related to the same facts as those alleged in detail in the other counts, which were on their face insufficient. In the present case the trial court based its judgment upon facts other than those set forth in the third count. ▌ The court made no finding that the parties had ever entered into the express oral agreement which is alleged in the third cause of action, but instead based its judgment upon the right to obtain restitution of money paid through fraud or mistake, and without consideration. A common count is a sufficient pleading to support such a judgment. (*Philpott* v. *Superior Court*, 1 Cal.2d 512, 518 [36 P.2d 635, 95 A.L.R. 990].)

▌ Defendant contends that there is no evidence to support the trial court's finding that plaintiff made a demand on King-Cola for the return of her money.

Without stopping to discuss whether any demand was necessary, since counsel have not briefed that issue, it is sufficient to point out that the record amply supports the finding. The record contains the testimony of attorney William Israel that on January 6, 1961, he attended a meeting at which all three directors of King-Cola, Inc., were present, including plaintiff and Ann Borden. At that meeting Mr. Israel stated, on behalf of plaintiff, "we want the amount of money that is represented by this statement," referring to a document which was later filed in this case as a part of a bill of particulars, listing items totaling $42,947.42.

▌ Finally, defendant's counsel, in oral argument, has cited *Minton* v. *Cavaney*, 56 Cal.2d 576 [15 Cal.Rptr. 641, 364 P.2d 473], for the proposition that a corporate officer and director may not avoid the responsibilities of the office by claiming he held the position "for accommodation." The *Cavaney* case referred to the tort liability of a director to a third

party. The case does not hold that a person holding a corporate office in name only, and who is actually ignorant of what is happening to her, may never recover money which she was induced to invest under conditions of fraud or mistake. The fact that plaintiff had accepted an office does not, as a matter of law, bar her right to recover from the corporation under the circumstances of this case, nor does it, as a matter of law and contrary to actual fact, put her on notice that stock had been issued to Borden. If courts were to impute full knowledge of corporate affairs to all directors in all cases, fraud would be an easy matter, for the guilty parties could readily immunize themselves by the simple expedient of making the victim a nominal director of the corporation in which he was induced to invest his money.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 15, 1964.