[No. B137829. Second Dist., Div. Seven. Aug. 28, 2000.]

McDERMOTT, WILL & EMERY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DONNA SMITH JAMES et al., Real Parties in Interest.

## COUNSEL

John H. Sharer and Kevin S. Rosen for Petitioner.

No appearance for Respondent.

Browne Greene, Christine D. Spagnoli, Ralph B. Wegis and Stuart B. Esner for Real Parties in Interest.

## OPINION

**WOODS, J.—**

### INTRODUCTION

May a shareholder sue its corporation's outside counsel in a *derivative* action for legal malpractice arising out of counsel's representation of the corporation, where the corporation refuses a proper demand to commence the action? Under the procedural posture of this case (a denial of a motion for judgment on the pleadings), we are not called upon to address the merits of this lawsuit or whether such a suit would subsequently be dismissed under the business judgment rule. Rather, we are asked to decide whether, assuming all procedural requirements have been met and the directors' bad faith is properly alleged, such a derivative suit against outside counsel may go forward.

Although shareholders, upon meeting certain prerequisites, may proceed in a derivative action against a third party to recover for harm done to the

corporation, a derivative lawsuit for malpractice against corporate outside counsel raises unique attorney-client privilege issues. Because the shareholders are not the holder of the privilege, they do not effect a waiver of that privilege merely by filing their action on the corporation's behalf. As a result, in the absence of a waiver by the corporate client, the third party attorney is effectively foreclosed from mounting any meaningful defense to the shareholder derivative action. Accordingly, and for the reasons expressed herein, we hold such a derivative action against the corporation's outside counsel, necessarily brought in equity, cannot proceed.

## FACTS AND PROCEDURAL HISTORY

Petitioner, McDermott, Will & Emery (MW&E), is outside legal counsel for Memorial Healthcare Systems, Inc. (MHSI), a nonprofit parent company of Bakersfield Memorial Hospital (Bakersfield Memorial). Real parties in interest are five of approximately 1,200 shareholders of MHSI.

In 1994, MHSI entered into negotiations with Mercy Healthcare Bakersfield (Mercy) to effect an "affiliation" between Bakersfield Memorial and Mercy. MW&E represented MHSI in these negotiations. After the affiliation agreement was executed, real parties in interest filed a direct action against MHSI and the other parties to the affiliation agreement (Kern County Action.) Real parties alleged, among other things, that the written ballot was misleading, the election was not fair because MHSI members were not provided with a membership list, and MHSI acted improperly in implementing the affiliation agreement. Real parties sought to void the affiliation agreement, and sought a preliminary injunction and damages. The court denied real parties' motion for preliminary injunctive relief, reasoning real parties likely lacked standing to pursue direct claims against MHSI.

While the Kern County Action was still pending, real parties in interest sued MW&E in this derivative action, claiming MW&E committed malpractice in drafting the ballots and assisting in the implementation of the election, and made false and misleading representations about the affiliation in order to effect the affiliation agreement.

Before any discovery was conducted, MW&E filed a motion for judgment on the pleadings, arguing, inter alia, that this derivative action against outside counsel constituted an "assignment" of a legal malpractice action in violation of California law, and was contrary to public policy because it required MW&E to defend a malpractice action without an ability to disclose privileged information in connection with such a defense. The trial court denied the motion. This petition followed.

## DISCUSSION

### I. *A Shareholder Derivative Action Against an Extracorporate Third Party Is Neither an Assignment of the Corporation's Claim to the Shareholders Nor an End Run Around the Business Judgment Rule.*

 MW&E contends this derivative lawsuit is akin to an assignment of the corporation's malpractice claim to dissident shareholders, and as such, is in violation of a long line of California precedent prohibiting the assignment of legal malpractice claims. (See, e.g., *Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019, 1023 [268 Cal.Rptr. 637] [assignment of legal malpractice claims is impermissible as a matter of public policy because, among other things, it would force attorneys to defend themselves against persons to whom no duty was ever owed]; see also *Baum v. Duckor, Spradling & Metzger* (1999) 72 Cal.App.4th 54, 66-67 [84 Cal.Rptr.2d 703]; *Jackson v. Rogers & Wells* (1989) 210 Cal.App.3d 336, 341-342 [258 Cal.Rptr. 454]; *Goodley v. Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389, 393 [133 Cal.Rptr. 83].)

In contending this derivative action is tantamount to an assignment of the corporation's malpractice claim, MW&E misconstrues the nature of a derivative action. An assignment of a claim " 'pass[es] title to a cause of action from one person to another.' " (*Fireman's Fund Insurance v. McDonald, Hecht, & Solberg* (1994) 30 Cal.App.4th 1373, 1382 [36 Cal.Rptr.2d 424].) A *derivative* action, in contrast, does not transfer the cause of action from the corporation to the shareholders. Rather, the cause of action in a shareholder derivative suit belongs to and remains with the corporation. Such a lawsuit is derivative, i.e., brought in the "corporate right," to recompense the *corporation* for injuries done to it. (*Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 107 [81 Cal.Rptr. 592, 460 P.2d 464].) Though it is named as a defendant, the corporation is "the real plaintiff and it alone benefits from the decree; the stockholders derive no benefit therefrom except the indirect benefit resulting from a realization upon the corporations' assets." (*Ibid.*)

MW&E further contends such a derivative lawsuit against an extracorporate third party must be precluded because it accomplishes an end run around the business judgment rule. MW&E contends the only remedy is a derivative suit against management or the board. Certainly, this is not the case. As our Supreme Court made clear, a shareholder derivative action may be brought to enforce a cause of action the corporation itself possesses against management, the board, or some *third party* when management fails to redress the wrong. (*Jones v. H.F. Ahmanson & Co., supra,* 1 Cal.3d at p. 107.)

· That is not to say a shareholder may proceed against a third party in a derivative action every time the corporation refuses a demand to commence the action. As the Supreme Court noted nearly a century ago, "[w]hether or not a corporation shall seek to enforce in the courts a cause of action for damages, is like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors." (*United Copper Co. v. Amal. Copper Co.* (1917) 244 U.S. 261, 263-264 [37 S.Ct. 509, 510, 61 L.Ed. 1119].) To proceed with a lawsuit against a third party in a derivative action after the corporation refuses to do so, the derivative action must allege the directors are guilty of misconduct or otherwise stand in a dual relation which prevents an unprejudiced exercise of judgment. (*Findley v. Garrett* (1952) 109 Cal.App.2d 166, 178 [240 P.2d 421].) The " 'court will not substitute its judgment for that of the board if the latter's decision can be "attributed to any rational business purpose." ' " (*Katz v. Chevron Corp.* (1994) 22 Cal.App.4th 1352, 1366 [27 Cal.Rptr.2d 681].)

II. *A Derivative Lawsuit Against Outside Counsel Raises Attorney-client Privilege Issues Which Foreclose the Attorney from Mounting a Meaningful Defense to the Action.*

Having held shareholders have standing to pursue a derivative action against an extracorporate third party to enforce the rights of the corporation provided certain prerequisites are satisfied, we must still confront the attorney-client privilege issues necessarily raised by a derivative malpractice action against corporate outside counsel. In holding a shareholder derivative action not to be tantamount to an assignment, we have reasoned that shareholders in such an action essentially "stand in the shoes" of the corporation. While this is true for most purposes, the one notable exception is with respect to the attorney-client privilege.

It is the corporation, and not the shareholder, who is the holder of the privilege. (*National Football League Properties, Inc. v. Superior Court* (1998) 65 Cal.App.4th 100, 109 [75 Cal.Rptr.2d 893].) Shareholders do not enjoy access to such privileged information merely because the attorney's actions also benefit them. (*Ibid.*) Nor do shareholders obtain the right to waive the privilege simply by virtue of filing the action on the corporation's behalf. (*Ibid.*)

This distinction makes a derivative malpractice action far different from a direct malpractice action. Generally, the filing of a legal malpra⸍ tice action against one's attorney results in a waiver of the privilege, thus enabling the attorney to disclose, to the extent necessary to defend against the action,

information otherwise protected by the attorney-client privilege. (Evid. Code, § 958; *Pacific Tel. & Tel. Co. v. Fink* (1956) 141 Cal.App.2d 332, 335 [296 P.2d 843].) However, because a derivative action does not result in the corporation's waiver of the privilege, such a lawsuit against the corporation's outside counsel has the dangerous potential for robbing the attorney defendant of the only means he or she may have to mount any meaningful defense. It effectively places the defendant attorney in the untenable position of having to "preserve the attorney client privilege (the client having done nothing to waive the privilege) while trying to show that his representation of the client was not negligent." (*Kracht v. Perrin, Gartland & Doyle, supra,* 219 Cal.App.3d at p. 1024, fns. omitted.)

To support their right to pursue this action, real parties draw our attention to cases in other jurisdictions, which they claim recognize the validity of a shareholder derivative action against outside corporate counsel. All of the cases cited by real parties view the issue as one of standing. Some focus on the harm alleged, noting any action against corporate counsel to recover for harm to the corporation would be a derivative, as opposed to a direct action. (See, e.g., *Robertson v. Gaston Snow & Ely Bartlett* (1989) 404 Mass. 515, 525, fn. 5 [536 N.E. 2d 344, 350] ["[T]he plaintiff cannot assert, in this personal action, any alleged breach of duty [the attorney] owed to the corporation. Any claim made by a shareholder based on [the attorney's] failure to disclose to the corporation the voting agreement . . . must be through a derivative action."]; see also *Palmer v. Fox Software, Inc.* (6th Cir. 1997) 107 F.3d 415, 420 ["we agree Palmer is not entitled to recover [directly] for acts of malpractice that resulted in injury to the corporation, and are therefore solely derivative claims"].)

Other cases uphold the action against challenges of absence of privity between the shareholder and the corporate counsel. These cases correctly note such derivative lawsuits do not raise privity concerns since the shareholders are simply asserting the rights of the corporation. (See, e.g., *Ohman v. Kahn* (S.D.N.Y. 1988) 685 F.Supp. 1302, 1310; *Karris v. Water Tower Trust & Sav. Bank* (1979) 72 Ill.App.3d 339 [27 Ill.Dec. 951, 389 N.E.2d 1359, 1370].)

We do not disagree with the rationale in any of these cases so far as standing is concerned. As we previously explained, we agree any lawsuit by a shareholder against corporate counsel for damage to the corporation must be derivative in nature. We also agree that as such, there is no issue of privity, since the shareholder sues on behalf of the corporation.

Where we depart from these cases, if at all, is in their failure to address the attorney-client privilege issues necessarily raised by such a lawsuit.

Unlike some courts, California courts have refused to carve out a shareholder exception to the attorney-client privilege, even in a derivative action. (*National Football League Properties, Inc. v. Superior Court, supra,* 65 Cal.App.4th at p. 107; *Hoiles v. Superior Court* (1984) 157 Cal.App.3d 1192, 1198 [204 Cal.Rptr. 111].) We simply cannot conceive how an attorney is to mount a defense in a shareholder derivative action alleging a breach of duty to the corporate client, where, by the very nature of such an action, the attorney is foreclosed, in the absence of any waiver by the corporation, from disclosing the very communications which are alleged to constitute a breach of that duty. Thus, while we decline to view a shareholder derivative action in the same vein as an assignment, the rationale used to prohibit all assignments of legal malpractice actions, on the ground attorneys would be unable to defend such actions in the absence of a waiver of the privilege by their own client, applies with equal force here. (*Kracht v. Perrin, Gartland & Doyle, supra,* 219 Cal.App.3d at p. 1024; *Baum v. Duckor, Spradling & Metzger, supra,* 72 Cal.App.4th 54, 67 [84 Cal.Rptr.2d 703].)

It has been suggested, and indeed adopted by some federal courts, that a case-by-case finding of good cause, including a likelihood that the corporate decision would be outside the protections of the business judgment rule, could be grounds for allowing the shareholders access to privileged information in any lawsuit they brought on the corporation's behalf. (See, e.g., *Garner v. Wolfinbarger* (5th Cir. 1970) 430 F.2d 1093, 1103-1104.) However, long-standing California case authority has rejected this application of the federal doctrine, noting it contravenes the strict principles set forth in the Evidence Code of California which precludes any judicially created exceptions to the attorney-client privilege. (*Dickerson v. Superior Court* (1982) 135 Cal.App.3d 93, 99 [185 Cal.Rptr. 97]; *Hoiles v. Superior Court, supra,* 157 Cal.App.3d at p. 1198.) In light of this history, the creation of any shareholder right to waive the privilege in a derivative action should be left to the California Legislature. And, in the absence of such a right, this derivative action, necessarily brought in equity, cannot go forward.

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order of November 17, 1999, denying MW&E's motion for judgment on the pleadings, and enter a new judgment granting MW&E's motion for judgment on the pleadings consistent with the reasons set forth herein.

Each party to bear its own costs in this writ proceeding.

Lillie, P. J., and Neal, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied December 13, 2000. Werdegar, J., was of the opinion that the petition should be granted.